UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JOHN DOE, ON BEHALF OF HIS MINOR
CHILD, JANE ROE[1],

                Plaintiff,

    -against-

OCEANSIDE UNION FREE SCHOOL
DISTRICT, DR. PHYLLIS S.
HARRINGTON, JULIE MCGAHAN, DR. J.
DEROSA, and ANTWAN HASKOOR, M.D.,

                Defendants.
--------------------------------X

ORDER
25-CV-06214(JS)(SIL)

APPEARANCES

For Plaintiff:       Chad A. Davenport, Esq.
                   Davenport Law PLLC
                   6384 Deanna Drive
                   Hamburg, New York 14075

For Defendants:      Brian S. Sokoloff, Esq.
                   Chelsea Ella Weisbord, Esq.
                   Sokoloff Stern LLP
                   179 Westbury Avenue
                   Carle Place, New York 11514

                   Lisa M. Griffith, Esq.
                   Steven E. Smith, Esq.
                   LITTLER MENDELSON, P.C.
                   290 Broadhollow Road
                   Suite 305
                   Melville, New York 11747

SEYBERT, District Judge:

---

[1] Hearing no opposition to Plaintiff's Letter Motion to Amend the Caption to identify the minor child as "Jane Roe" (see ECF No. 12), said Letter Motion is GRANTED.

Presently before the Court is the Motion for Temporary Restraining Order and Preliminary Injunction brought by Plaintiff John Doe ("Plaintiff"), on behalf of his minor child Jane Roe ("Jane"), against Defendants Oceanside Union Free School District ("Oceanside" or the "District"), Dr. Phyllis S. Harrington, Julie McGahan, Dr. J. DeRosa (collectively with the District the "Oceanside Defendants"), and Antwan Haskoor, M.D. ("Dr. Haskoor") (collectively with the Oceanside Defendants, the "Defendants"). (See ECF No. 5, hereinafter, the "TRO Motion," see also "Compl.", ECF No. 1; "Reply," ECF No. 14.) Plaintiff filed the TRO Motion after the District denied Jane's request for a medical exemption from New York State's school immunization requirements. (TRO Motion at 1); see also N.Y. Pub. Health Law § 2164 ("§ 2164"). Consequently, Jane has been barred from school since September 29, 2025. (TRO Motion at 7.) Plaintiff seeks an injunction (1) enjoining and restraining Defendants from barring Jane from school, and (2) compelling Defendants to approve Jane's medical exemption. (Id. at 25.) Plaintiff argues the District's denial violates § 2164(8), Title II of the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act, and the First and Fourteenth Amendments of the U.S. Constitution. (TRO Motion at 12-23.) Defendants oppose the TRO Motion. (See "Dr. Haskoor Opp'n", ECF No. 10; "Oceanside Opp'n", ECF No. 11.) For the reasons stated below, the TRO Motion is DENIED in its entirety.

BACKGROUND

I.       Relevant Factual Background

Jane is a five-year-old enrolled at Oceanside's School #6 Early Learning Center (the "School"). (Compl. ¶ 10; TRO Motion at 2[2].) Since September 29, 2025, she has been barred from School because the District denied her request for a medical exemption from New York State's DTAP, Varicella, MMR, and Polio immunization requirements; she is consequently not receiving instruction or the specialized educational services the District would have provided in connection with her autism spectrum disorder ("ASD") diagnosis. (Compl. ¶¶ 3, 20, 23; TRO Motion at 2-4; the Denial Letter, Ex. G, ECF No. 5-9, attached to the "Davenport Declaration", ECF No. 5-1); see also § 2164 (8).

Plaintiff registered Jane for kindergarten in early 2025, without documentation of any immunization or doctor-approved exemption. (Oceanside Opp'n at 4; DeRosa Declaration at ¶ 12, ECF No. 11-14, attached to the "Sokoloff Declaration", ECF No. 11-1.) On February 18, 2025, the District emailed Plaintiff, stating it did not have Jane's required immunization paperwork. (Oceanside Opp'n at 4; DeRosa Declaration ¶ 13; February 18, 2025 Registration Email, Ex. H, ECF No. 11-9, attached to the Sokoloff Declaration.)

---

[2] Because neither the TRO Motion nor the Reply include page numbers, the Court will consider the pages beginning with "Preliminary Statement" on each respective filing as Page No. 1. For ease of citation, best practice is to include page numbers in submissions.

When the February 18 email did not prompt any action from Plaintiff, the District sent Plaintiff additional emails on March 6, March 19, August 1, and August 6, 2025, which similarly prompted no action. (Oceanside Opp'n at 4; DeRosa Declaration ¶ 13.) On August 26, 2025, a School nurse called Jane's mother, informing her Jane would be barred from the School starting on September 16, 2025 if Plaintiff could not show Jane: (1) had received all required vaccinations; (2) was in the process of receiving them; or (3) was approved for a valid medical exemption. (Oceanside Opp'n at 4-5; Cohen Declaration ¶¶ 5-7, ECF No. 11-16, attached to the Sokoloff Declaration.) Jane's mother indicated over the phone that she would send a medical exemption request, because of Jane's ASD diagnosis. (Cohen Declaration ¶ 7.) Despite her unresolved immunization status, Jane was temporarily admitted to the School in September. (Compl. ¶ 46; TRO Motion at 9.)

On September 5, 2025, Plaintiff submitted a medical exemption request signed by Dr. Eric Goldstein (the "Exemption Request"), which identified the following contraindications:

(a) Re: DTAP: A genetic MTHFR mutation impairing detoxification, increased risk of contraindication due to ASD, and a prior severe reaction of "muscular ticks/seizing" (Compl. ¶ 23; TRO Motion at 4; Exemption Request Packet, Ex. B at 5, ECF No. 5-3, attached to the Davenport Declaration);

(b) Re: Varicella: Reduced immune function and recurring infections attributed to ASD and a prior vaccine-induced pneumonia;

4

(c) Re: MMR: Immune deficiency and suppression associated with ASD, prior vaccine-induced "muscular twitches and seizure", and a family history of seizures; and

(d) Re: Polio: Chronic eczema linked to an ingredient contraindication, a family history of asthma, ASD-related ingredient hypersensitivity, and a "severe reaction to the last dose" (Compl. ¶ 23; TRO Motion at 4; Exemption Request Packet at 6.)[3]

Although § 2164 (8) does not recognize non-medical exemptions, Plaintiff has indicated he has religious objections to vaccinations as well. § 2164 (8); (see also Compl. ¶¶ 115-24; TRO Motion at 16-17; Religious Exemption Request, Ex. N, ECF No. 5-15, attached to the Davenport Declaration.) Plaintiff's religious-based objection to vaccinations is informed by his personal religious experiences and interpretation of the Bible, which are rooted in his Catholic faith. (Id.) An undated exhibit shows a letter purportedly authored by Plaintiff, in which he appears to request a religious exemption from the District, although it is unclear whether this letter was ever actually sent. (Religious Exemption Request.)

On September 11, 2025, Dr. Haskoor, the District's medical director, recommended the District deny the Exemption Request. (Compl. ¶¶ 36-37; TRO Motion at 5-6; DeRosa Decl. ¶ 15.) Dr. Haskoor believed the asserted contraindications were not

---

[3] The Complaint and TRO Motion indicate the Exemption Request was submitted on September 11, 2025, but the Exemption Request Packet is dated September 5, 2025, and the DeRosa Declaration indicates Defendants received the Exemption Request on September 5, 2025. (See DeRosa Declaration ¶ 14.)

recognized under the Advisory Committee on Immunization Practices ("ACIP") standards.    (Id.) After discussing Jane's Exemption Request with Dr. Goldstein, his conclusion remained unaltered. (TRO Motion at 5-6; DeRosa Decl. ¶ 16.) On September 15, 2025, School Principal Julie McGahan denied the Exemption Request, because it did not "contai[n] sufficient information to identify a medical contraindication to a specific immunization and specifying the length of time the immunization is medically contraindicated".    (Compl. ¶¶ 26-27; TRO Motion at 11; Initial Rejection Letter, Ex. C, ECF No. 5-4, attached to the Davenport Declaration.) Later that evening, Dr. Goldstein submitted a clarifying addendum, representing the contraindications may be permanent but would be re-evaluated annually. (Compl. ¶¶ 30-31; TRO Motion at 4-5; Exemption Request Addendum, Ex. D, ECF No. 5-5, attached to the Davenport Declaration.) On September 22, 2025, Principal McGahan requested additional details on Jane's purported adverse reactions.    (Compl. ¶¶ 32-33; TRO Motion at 5; Supplemental Request, Ex. E, ECF No. 5-6, attached to the Davenport Declaration.) On September 24, 2025, Plaintiff's counsel sent the District a letter demanding the Exemption Request be granted, adding: "we are prepared to immediately file for a Temporary Restraining Order and Preliminary Injunction in the U.S. District Court for the Eastern District of New York." (Compl. ¶¶ 41-43; TRO Motion at 6; Demand Letter, Ex. H, ECF No. 5-7, attached to

6

the Davenport Declaration.) On September 26, 2025, Principal McGahan issued a final denial of the Exemption Request, effective September 29, 2025, citing insufficient evidence of a valid contraindication and Plaintiff's lack of cooperation with the District's September 22 request. (Compl. ¶¶ 44-46; TRO Motion at 7; Final Denial Letter, Ex. G, ECF No. 5-8, <u>attached to</u> the Davenport Declaration.)

II.    <u>Administrative Appeal & Relevant Procedural Background</u>

On October 7, 2025, Plaintiff filed an administrative appeal of the District's decision with the New York State Commissioner of Education (the "Commissioner"), as provided for by N.Y. Education Law § 310 (hereinafter, the "Administrative Appeal"). (Compl. ¶¶ 48-49; TRO Motion at 7; Administrative Appeal Motion, Ex. H, ECF No. 5-9, <u>attached to</u> the Davenport Declaration.) As part of the Administrative Appeal, Plaintiff also requested a stay of the District's denial pending resolution of the appeal. (<u>Id.</u>) On October 10, 2025, the District filed an opposition to the stay request; the stay request was denied on October 15, 2025. (Compl. ¶¶ 49-50; Administrative Appeal Opp'n, Ex. I, ECF No. 5-10, <u>attached to</u> the Davenport Declaration; Stay Denial, Ex. K, ECF No. 5-12, <u>attached to</u> the Davenport Declaration.) The Commissioner subsequently extended the District's time to respond to the appeal, moving its deadline from November 10 to December 10, 2025. (Compl.

¶ 52; TRO Motion at 7-8; Extension Letter, Ex. P, ECF No. 5-17, <u>attached to</u> the Davenport Declaration.)

Plaintiff filed the Complaint on November 7, 2025, and the TRO Motion on November 11, 2025. (<u>See</u> Compl.; TRO Motion.) The Complaint and TRO Motion allege the District's denial violates: (1) § 2164(8), on grounds the District improperly rejected the Exemption Request; (2) Title II of the Americans with Disabilities Act, on grounds the Exemption Request is a protected disability-based "reasonable accommodation"; (3) Section 504 of the Rehabilitation Act, on similar "reasonable accommodation" grounds; (4) the Fourteenth Amendment of the U.S. Constitution, on grounds Defendants' conduct violates Plaintiff's substantive due process rights; (5) the First Amendment of the U.S. Constitution, based on Plaintiff's religious objection to vaccination; and (6) <u>Monell</u> liability against the District, on grounds its exemption denial policies are illegal.[4] (Compl. at 20-33; TRO Motion at 9-19.) Throughout the TRO Motion, Plaintiff also alleges the District's denial defies the injunction issued in <u>Doe v. Oceanside Union Free School District</u>, No. 25-CV-2304 (GRB)(ST) (E.D.N.Y. 2025) ("<u>Doe I</u>"), a separate vaccine exemption case involving an Oceanside High School student. (<u>See</u> TRO Motion at 6.) Plaintiff also argues the public interest and balance of equities favor an injunction, as

---

[4] Plaintiff asserts the latter three claims pursuant to 42 U.S.C. § 1983.

Jane's need for education and services should take precedence over any burden the District bears in admitting Jane. (TRO Motion at 21-25.) On November 12, 2025, this Court declined to immediately issue a TRO and set a briefing schedule. (See Nov. 12, 2025 Order.) The Oceanside Defendants and Dr. Haskoor filed separate oppositions on November 21, 2025, and Plaintiff filed his Reply on December 1, 2025.

In their Opposition, the Oceanside Defendants stress the high burden a movant must clear to obtain a preliminary injunction, which is even higher for "mandatory" injunctions altering the parties' status quo positions and for injunctions affecting "government action taken in the public interest under a statutory or regulatory scheme." (Oceanside Opp'n at 7-8 (citing, e.g., Monserrate v. N.Y. State Senate, 599 F.3d 148, 154 (2d Cir. 2010) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"); Mastrovincenzo v. City of N.Y., 435 F.3d 78, 89 (2d Cir. 2006) ("mandatory" injunctions "alter the status quo by commanding some positive act" and accordingly require movant to "demonstrate a greater likelihood of success")).) In the Oceanside Defendants' view, any showing of irreparable harm is diminished, because of Plaintiff's delay in filing the TRO Motion. (Oceanside Opp'n at 9-12.) The Oceanside Defendants also argue Plaintiff has not shown a likelihood of success on the merits of any claim, and that the District's interest in public health tips

the balance of hardships and public interest in their favor. (Id. at 13, 24-25.) Dr. Haskoor's Opposition raises several individualized defenses purportedly applying to him, as an outside consultant not formally employed by the District. (Dr. Haskoor Opp'n at 1-2.)

DISCUSSION

I.    Applicable Law

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest". N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018) (citing N.Y. ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015)). "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act . . . [and] thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success". Mastrovincenzo, 435 F.3d at 89 (quoting Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (emphasis in original)); see also N. Am. Soccer League, 883 F.3d at 37 (citing N.Y.C.L. Union v. N.Y.C.

10

Transit Auth., 684 F.3d 286, 294 (2d Cir. 2012) (instructing party seeking mandatory injunction to show "a clear or substantial likelihood of success on the merits").  The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy". Mastrio v. Sebelius, 768 F.3d 116, 120 (2d Cir. 2014) (citing LaRouche v. Kezer, 20 F.3d 68, 74 n.7 (2d Cir. 1994); see also Caviezel v. Great Neck Pub. Sch., 701 F. Supp. 2d 414, 426 (E.D.N.Y. 2010), aff'd, 500 F. App'x 16 (2d Cir. 2012) ("Caviezel I") (injunction requiring school to register unvaccinated student would "affect government action taken in the public interest pursuant to a statutory or regulatory scheme" and "alter the status quo")).  "It is well established that the standard for entry of a temporary restraining order is the same as for a preliminary injunction".  Cooper v. Fire & Ice Trucking, Corp., 783 F. Supp. 3d 744, 746 (E.D.N.Y. 2025) (quoting Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd., 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).) "[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction." Mullins v. City of N.Y., 626 F.3d 47, 52 (2d Cir. 2010).

II.  <u>Application</u>

   1. <u>The Sought Injunction is Mandatory</u>

        Plaintiff contends the "last actual, peaceable uncontested status" was "[Jane's] position as an enrolled kindergarten student permitted to attend" the School. (TRO Motion at 8-9.) But Jane's temporary admission was anything but peaceable; the parties engaged in adverse communications throughout this period. (See <u>infra</u> at 4-6 ("Relevant Factual Background" section.) In contrast with Jane's fraught and temporary admission, Plaintiff seeks an indefinite injunction "<u>[d]irecting Defendants to immediately accept</u> [Jane Roe's] valid medical exemption[.]" (TRO Motion at 25 (emphasis added).) Such an injunction can only be categorized as mandatory, as it commands positive conduct. <u>See</u> Mastrovincenzo, 435 F.3d at 89.

        The positive conduct Plaintiff seeks to compel mirrors the relief sought in <u>Caviezel I</u>. 701 F. Supp. 2d at 426. In <u>Caviezel I</u>, the plaintiff sought an injunction requiring a school district to register a student "without being required to be vaccinated." <u>Id.</u> at 425-26. The Court determined such an injunction "w[ould] alter the status quo" and accordingly applied the "clear or substantial" likelihood of success standard to Plaintiff's claims. <u>Id.</u> As an injunction in this matter would similarly alter the status quo, in addition to disrupting New York's action taken in the public interest under a statutory or

12

regulatory scheme, Plaintiff must show "a clear or substantial likelihood of success on the merits" of his claims to obtain the sought relief.  N. Am. Soccer League, 883 F.3d at 37.

    2. Plaintiff's Delays Diminish Showing of Harm

        Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction . . . the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered". Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999) (citations omitted). "[I]rreparable harm exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" State Farm Mut. Auto. Ins. v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 80 (2d Cir. 2024) (quoting Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999)).  Loss of education has been held to be a form of irreparable harm.  See, e.g., NM v. Hebrew Acad. Long Beach, 155 F. Supp. 3d 247, 257 (E.D.N.Y. 2016) ("school-aged children have been deemed irreparably injured as a result of being excluded from attending classes"); Caviezel I, 701 F. Supp. 2d at 426 (court is "satisfied" precluding child from school amounts to irreparable harm).  However, delay in seeking relief can mitigate against a finding of irreparable harm.  See, e.g., Fisher-Price, Inc. v.

Well-Made Toy Mfg. Corp., 25 F.3d 119, 124 (2d Cir.1994) (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)) ("'[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights,' and a delay in enforcement 'tends to indicate at least a reduced need for such drastic, speedy action.'"); Garland v. N.Y.C. Fire Dep't, 574 F. Supp. 3d 120, 132 (E.D.N.Y. 2021) ("Plaintiffs' claimed need for injunctive relief is belied by their own delay in seeking that relief").

The Complaint and TRO Motion detail Jane's need for education and specialized services, which she is not receiving while she is excluded from school. (See Compl. ¶ 20; TRO Motion at 20-21.) Without these services, it is possible Jane could developmentally regress. These conditions, coupled with the precedents finding education-based irreparable harm, tend to support Plaintiff's position. See NM, 155 F. Supp. 3d at 257; Caviezel I, 701 F. Supp. 2d at 426.

However, Plaintiff's position is undercut by his delay in seeking relief, leading the Court to conclude this factor weighs only slightly in Plaintiff's favor. The delay analysis in Garland v. N.Y.C. Fire Department is instructive. On October 21, 2021, several New York City firefighters were informed they would be barred from facilities if they did not receive a COVID-19

14

vaccination dose by October 29, 2021.  574 F. Supp. 3d at 123.  On November 24, 2021, several firefighters sought to enjoin the action.  Id.  The Court denied this request because "Plaintiffs' claimed need for injunctive relief is belied by their own delay in seeking that relief".  Id. at 132.

A similar approach is warranted here.  From February to August 2025, the District repeatedly contacted Plaintiff about Jane's vaccination records, including by warning that Jane would eventually be barred from school if she remained noncompliant. (See infra at 3-4.) After several months of inaction, Plaintiff did not submit the Exemption Request until September 5, 2025. (See infra at 4-5.) Even after the District issued its final denial on September 26, 2025, Plaintiff did not initiate the Administrative Appeal until October 7, 2025, and did not file the instant Complaint until several weeks after the Commissioner's October 15 denial of the stay. (See infra p. 7.) This is so despite counsel's representation in his September 24, 2025 demand letter that Plaintiff was "prepared to immediately file for a Temporary Restraining Order and Preliminary Injunction in the U.S. District Court for the Eastern District of New York." (Demand Letter at 1 (emphasis added).) These delays undermine Plaintiff's claim of irreparable harm, although this factor is not dispositive because Plaintiff has also failed to demonstrate a "clear or substantial

likelihood of success" on the merits of any claim.  N. Am. Soccer
League, 883 F.3d at 37.

   3. Plaintiff Has Not Shown A Likelihood of Success on the Merits

      Although Plaintiff is free to raise his claims in the
ordinary course of litigation, he has not demonstrated a
preliminary injunction is warranted for any of them, for the
reasons discussed below.

   A. Plaintiff Has Not Shown Likelihood of Success on New York
      Public Health Law § 2164(8) Claim

      The parties disagree on whether § 2164(8) gives
discretion to school districts in handling exemption requests.
Under Plaintiff's interpretation, § 2164(8) requires schools to
automatically accept any physician-certified exemption request.
(TRO Motion at 9-10 (citing N.Y. Pub. Health Law § 2164(8); Miller
v. McDonald, 130 F.4th 258, 269 (2d Cir. 2025), cert. granted,
judgment vacated on other grounds, Miller v. McDonald, No. 25-133,
2025 WL 3506969 (U.S. Dec. 8, 2025) ("the authority conferred to
physicians [under § 2164(8)] is not discretionary [and] is limited
by the statute and regulations"); Doe I Tr. 55:24-56:04).)  Under
the Oceanside Defendants' interpretation, § 2164(8) gives school
districts discretion to ascertain whether a request is consistent
with ACIP standards before accepting it.  (Oceanside Opp'n at 13-
15 (citing 10 NYCRR §66-1.1(1) (regulation requiring exemption to

16

be "consistent with ACIP guidance or other nationally recognized evidence-based standard of care")).)

The parties also disagree as to whether Plaintiff has administratively exhausted his § 2164(8) claim and, as a result, whether the Court can reach the statutory interpretation question at all. Because the Administrative Appeal is pending, the Oceanside Defendants argue Plaintiff must exhaust this process, as required under New York law. (Oceanside Opp'n at 13-14 (citing Walker v. N.Y.S. Dep't of Health, 788 F. Supp. 3d 427, 508 (E.D.N.Y. 2025); Watkins-El v. Dep't of Educ., No. 16-CV-2256, 2016 WL 5867048, at *3 (E.D.N.Y. Oct. 7, 2016); 10 NYCRR §66-1.1, 1.3(c)); see also "Doe v. Kellenberg Tr.," Ex, L, ECF No. 11-13, attached to the "Sokoloff Declaration" (transcript of bench ruling in Doe v. Kellenberg Mem'l High Sch., No. 25-CV-06013 (E.D.N.Y. Nov. 10, 2025).) Plaintiff alternatively contends: (1) the state administrative process is futile because the Commissioner extended the District's time to respond (see TRO Motion at 7-8); (2) Plaintiff "diligently exhausted the futile state administrative process" by seeking an emergency stay; (Reply at 1-2), and (3) exhaustion is not required by New York state law (see Id. at 7-8 (citing N.Y. Educ. L. § 310)).

Because "[c]ourts in this Circuit have held that, as a prerequisite to bringing a state claim in federal court,

individuals suing school districts and their employees for denying a[n] exemption from Section 2164's school immunization mandate must first exhaust administrative remedies by appealing that decision to the Commissioner of Education", the Court agrees Plaintiff has failed to administratively exhaust his claim. Walker, 788 F. Supp. 3d at 517 (citing Caviezel I, 701 F.Supp 2d at 425.)   For example, in Walker, plaintiffs were denied an injunction to reinstate unvaccinated students because they failed to file an administrative appeal.   788 F. Supp. 3d at 517.   In Watkins-El, the Court also deemed a failure to administratively appeal a school's exemption decision as a failure to exhaust.   2016 WL 5867048, at *3.   In Doe v. Kellenberg Memorial High School, the Court also denied a preliminary injunction brought on behalf of an unvaccinated student with a pending administrative appeal.   (See Doe v. Kellenberg Tr.)   In ruling from the bench, Judge Choudhury explained "failure to exhaust is a serious issue, and I haven't seen an argument or a demonstration that the failure to exhaust would permit me to even rule on the [§ 2164(8)] claim".   (Doe v. Kellenberg Tr. 96:13-22.)   Throughout her ruling, the Judge also emphasized the heightened showing on the merits a plaintiff must make to obtain extraordinary injunctive relief, especially where the injunction is mandatory and disrupts state enforcement of a regulatory regime, such as here, as opposed to the comparatively lower standard needed to survive a motion to dismiss.   (Id. at

88:07-16; 92:05-93:08.) Plaintiff counters by citing to Caviezel v. Great Neck Public Schools, 739 F. Supp. 2d 273, 282 (E.D.N.Y. 2010) ("Caviezel II"), which Plaintiff says supports the proposition that "exhaustion is excused where the remedy is futile," although Caviezel II did not address the futility of administrative processes. (Reply at 8.)

In light of the caution this Court must exercise in granting a mandatory injunction—especially where the injunction affects a state regulatory regime—the Court finds the exhaustion issue warrants against granting the injunction. Walker, 788 F. Supp. 3d at 517; Watkins-El, 2016 WL 5867048, at *3; (Doe v. Kellenberg Tr. 88:07-16; 92:05-93:08; 96:13-22). To the extent Plaintiff wishes to show this claim does not need to be exhausted, he may do so at a later stage, but he cannot currently demonstrate the "clear or substantial likelihood of success" needed to obtain the sought injunction. N. Am. Soccer League, LLC, 883 F.3d at 37.

Plaintiff also repeatedly asserts Defendants "willfully" defied the Doe I injunction by denying Jane's Exemption Request. (See, e.g., TRO Motion at 11.) This is incorrect. While Judge Brown did issue a preliminary injunction on behalf of a separate Oceanside High School student with an immunization exemption claim, his decision was "based on a very limited set of facts, and

19

it's very specific to this case". (Doe I Tr. at 53:1-54:21.) Defendants have no obligations to Plaintiff or Jane under Doe I.

Doe I is also factually distinguishable. The Doe I plaintiff sought an exemption from the final of three required Hepatitis B vaccinations due to a history of vaccine-related injuries, hospitalizations, near-death experiences, and other related contraindications. (Doe I Tr. at 3:15-5:03.) Seven doctors represented the plaintiff could not receive the vaccine; some indicated she could even die upon receiving it. (Id. at 15:19-16:04.) In weighing the injunction's public interest factor, Judge Brown also observed the plaintiff was partially inoculated against Hepatitis B which, in any event, carried a low risk of transmission in schools. (Doe I Tr. at 59:15-23.)

By contrast, Jane is missing four vaccines and does not have similar corroboration to extreme contraindications. (Compl. ¶ 23; TRO Motion at 4; Final Denial Letter.) To the contrary, Plaintiff failed to provide additional corroborative information when the District requested it. (Compl. ¶¶ 44-46; TRO Motion at 7; Final Denial Letter.) The record also does not contain information showing, as the Doe I Court found, the missing vaccinations do not pose a substantial risk to other students and

faculty.   Thus Plaintiff has not shown a likelihood of success on the § 2164(8) claim at this stage.[5]

   B. **Plaintiff Has Not Shown Likelihood of Success on the ADA or Rehabilitation Act Claims**

      Plaintiff has additionally failed to establish a likelihood of success on the ADA and Rehabilitation Act claims. To establish a failure to make a "reasonable accommodation" under the ADA or Rehabilitation Act, a plaintiff must demonstrate: "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability". Davis v. Shah, 821 F.3d 231, 259 (2d Cir. 2016) (quoting Fulton v. Goord, 591 F.3d 37, 43 (2d Cir.2009)). One of the two cases Plaintiff relies upon to establish the "reasonable accommodation" element, Tsombanidis v. West Haven Fire Department, 352 F.3d 565, 565 (2d Cir. 2003), is factually inapposite.  (TRO Motion at 15.) Tsombanidis held a city failed to reasonably accommodate the owners and residents of an addiction recovery home by denying a zoning variance.  Id.  Plaintiff cites this case in support of his assertion that the District

---

[5] Because the exhaustion issue precludes a finding of a clear likelihood of success on the merits, the Court declines to address the parties' supplemental jurisdiction arguments under 28 U.S.C. § 1367.

21

discriminated against Jane "by reason of her disability", but he offers no explanation as to how the decision establishes a likelihood of success on the merits of his claim. (TRO Motion at 15 (citing Tsombanidis, 352 F.3d at 580).)

Plaintiff's citation to Doe I seems more availing as to the ADA claim, but nonetheless fails to demonstrate a "clear or substantial" likelihood of success. (TRO Motion at 15); N. Am. Soccer League, 883 F.3d at 37. In Doe I, ruling from the bench, Judge Brown stated, "I do think that under the ADA, there is a cognizable claim here" but he did not elaborate further upon the ADA claim. (Doe I Tr. at 54:08-10.) As discussed above, the remainder of Judge Brown's ruling primarily rested on New York State law and a distinguishable set of facts. (See infra at 19-20).

These authorities contrast with the Second Circuit's explanation that a medical exemption denial does "not bar students with disabilities from schools because of their disabilities. Children who cannot be safely vaccinated because of their disability will receive a medical exemption and may attend school, so long as they can demonstrate a medical need, based on a national evidence-based standard, for an exemption". Goe v. Zucker, 43 F.4th 19, 36 (2d Cir. 2022) (emphasis in original). "[T]o the extent there is a disagreement on whether the requirements are met

22

in any particular case", the Second Circuit explains "parents can appeal to the Commissioner of Education and seek judicial review in the state court system through an Article 78 proceeding". Id.; see also D.A.B. v. N.Y.C. Dep't of Educ., 45 F. Supp. 3d 400, 400-403 (S.D.N.Y. 2014) (denial of medical exemption for autistic student does not violate Rehabilitation Act). Plaintiff accordingly cannot demonstrate a likelihood of success on these claims.[6]

   C.   Plaintiff Has Not Shown Likelihood of Success on the Substantive Due Process Claim

      Plaintiff also posits the District's initial denial, request for additional information, and final denial are "the antithesis of a rational, good-faith application of the law [and amount to] a bad-faith, arbitrary campaign against a five-year-old child", such that the conduct violates the Fourteenth Amendment's substantive due process protections. (TRO Motion at 16.) Plaintiff contends this conduct satisfies the "shocks the contemporary conscience" standard because it was "undertaken in willful defiance of" the injunction in Doe I.

---

[6] As to the individual Defendants, the ADA and Rehabilitation Act claims are unlikely to succeed because "[n]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials". Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001).

(Id. (citing County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998); (Doe I) (emphasis in original)).)

"[O]nly the most egregious official conduct can be said to be 'arbitrary' in the constitutional sense," and "the scope of substantive due process is very limited". County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998); Soundview Assocs. v. Town of Riverhead, 725 F. Supp. 2d 320, 333 (E.D.N.Y. 2010) (collecting cases). Given substantive due process's narrow scope, it is difficult to conclude Defendants' denial and request for additional information—done in consultation with a medical doctor—amount to "the most egregious official conduct". County of Sacramento, 523 U.S. at 847. Plaintiff cites to no case making such a finding and, as discussed above, Defendants did not engage in "willful defiance of" the Doe I injunction. (See infra at 19-20.) Thus, Plaintiff has not shown a likelihood of success on this claim.

D.    Plaintiff Has Not Shown Likelihood of Success on the Free Exercise Claim

In addition to the medical claims, Plaintiff argues the District's denial unconstitutionally burdens his First Amendment Free Exercise rights. (TRO Motion at 16-17.) While addressing this claim, both parties cited to Miller v. McDonald, 130 F.4th 258 (2d Cir. 2025), which upheld New York's repeal of § 2164's religious exemption provision. Plaintiff argued Miller only

24

allowed for a strictly "mandatory" and nondiscretionary medical exemption regime, which the District failed to provide when it reviewed the Exemption Request with an "unwritten" "ACIP-only" standard.  (TRO Motion at 17 (citing Miller, 130 F.4th 258).)  By contrast, the Oceanside Defendants argued the Free Exercise claim cannot be maintained because Miller upheld the immunization law. (Oceanside Opp'n at 19 (citing Miller, 130 F.4th 258).)

After the parties briefed the TRO Motion, the Supreme Court vacated Miller in a December 8, 2025 grant, vacate, and remand order (the "GVR Order").  Miller v. McDonald, No. 25-133, 2025 WL 3506969 (Dec. 8, 2025) (Mem.).  The GVR Order granted certiorari on Miller and remanded the case to the Second Circuit "for further consideration in light of Mahmoud v. Taylor, 606 U. S. 522 (2025)".  Id.  The Second Circuit's Miller opinion is thus no longer binding precedent.  See Russman v. Bd. of Educ. of Enlarged City Sch. Dist., 260 F.3d 114, 121-22 n.2 (2d Cir. 2001) ("[w]hen imposed by the Supreme Court, vacatur eliminates an appellate precedent that would otherwise control decision on a contested question throughout the circuit.")

Despite the GVR Order, the factual record and the parties' legal positions as to the Free Exercise claim are too underdeveloped to demonstrate Plaintiff has a "clear or substantial likelihood" of success.  N. Am. Soccer League, 883

F.3d at 37; <u>see also</u> <u>Upjohn Co. v. Medtron Lab'ys, Inc.</u>, 751 F. Supp. 416, 423 (S.D.N.Y. 1990) (declining to issue injunction due to "undeveloped state of the record").  To date, Plaintiff has not filed a Notice of Supplemental Authority or made any arguments about the GVR Order, and it is Plaintiff's burden to show entitlement to the "extraordinary" relief of a mandatory injunction with a "greater likelihood" of success on the merits. <u>Monserrate</u>, 599 F.3d at 154; <u>Mastrovincenzo</u>, 435 F.3d at 89. Moreover, although Plaintiff alleges his vaccine-related religious beliefs in the Complaint (Compl. ¶¶ 115-24), most of the briefing and pre-litigation correspondence address a medical exemption.  It is unclear whether Plaintiff ever raised his religious beliefs with the District.  Given Plaintiff's burden and the extraordinary nature of a mandatory injunction, the Court cannot grant relief at this juncture.  <u>N. Am. Soccer League,</u> 883 F.3d at 37; <u>Monserrate</u>, 599 F.3d at 154; <u>Sebelius</u>, 768 F.3d at 120.

   E. <u>Plaintiff Has Not Shown Likelihood of Success on the <u>Monell</u> Claim</u>

   Because Plaintiff has not shown a likelihood of success on the underlying claims, he is unable to show a likelihood of success on his <u>Monell</u> claim.  <u>See</u> <u>Morales v. City of N.Y.</u>, 752 F.3d 234, 238 (2d Cir. 2014) (citing <u>Monell v. Dep't of Soc. Servs.</u>

26

of City of N.Y., 436 U.S. 658 (1978))(no Monell liability where Plaintiff's "underlying constitutional claims" were dismissed).

    4. The Balance of Hardships & Public Interest is a Neutral Factor

       Plaintiff argues the hardships Jane faces in being excluded from school—as she is not receiving instruction, specialized services, or daily socialization—pale in comparison to the District's burdens in admitting her. (TRO Motion at 21-23 (citing A.A.C. on behalf of G.C. v. Starpoint Cent. Sch. Dist., No. 24-CV-1047, 2025 WL 1201971, at *21 (W.D.N.Y. Apr. 25, 2025).)) Plaintiff similarly asserts the public interest "is served by ensuring children have access to education" and that the "public interest includes protecting child health by respecting the entire statutory mechanism for medical exemptions". (TRO Motion at 24 (emphasis in original).) The Oceanside Defendants maintain Jane's admission risks exposing "medically vulnerable individuals in or near [Jane's] classroom" to disease, including a student with brain cancer. (Oceanside Opp'n at 24-25 (citing Doe v. Zucker, 520 F. Supp. 3d 217, 250 (N.D.N.Y. 2021); Goe, 43 F.4th at 36 (further citation omitted)) see also McGahan Declaration, ¶19, ECF No. 11-15 (identifying the School's medically vulnerable students and employees).)

       The Court finds the parties' asserted interests are respectively important. If Jane is admitted to school, third

parties could be placed at additional risk of infection.  If Jane is barred from school, she will not receive the education or socialization she has an interest in receiving.[7]  Given the significant societal interests implicated on both sides—public health and access to education—the Court concludes that these considerations offset one another and, further, do not favor either party.

5. Claims Against Dr. Haskoor

Because Plaintiff has not shown a likelihood of success on the merits on the aforementioned claims, the Court need not reach the individualized defenses asserted by Dr. Haskoor.

CONCLUSION

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED** that Plaintiff's TRO Motion (ECF No. 5) is **DENIED**.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: December 22, 2025
       Central Islip, New York

---

[7] While the Court will not compel any action at this stage, it encourages the District to ascertain whether any alternative services can be offered to Jane while she is excluded from attending the School, given "[p]ublic education has a pivotal role in maintaining the fabric of our society and in sustaining our political and cultural heritage". Plyler v. Doe, 457 U.S. 202, 203 (1982).  For example, perhaps the parties could agree to a pendency placement agreement for Jane, under which some of Jane's educational needs could be met.